UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ORLANDO S., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 4:25-CV-01240-SPM |
| | ) | |
| FRANK BISIGNANO, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Frank Bisignano, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Orlando S. ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 7). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

## I. FACTUAL BACKGROUND

The Court accepts the facts as set forth in the parties' respective statements of facts and responses. Briefly, Plaintiff testified at the hearing, *inter alia*, that he left his last job because of back injuries that started getting worse after a rear-end collision; that he has severe lower back pain, worsened by bending, stooping, squatting, and crawling; that he has patellofemoral syndrome in both knees that sometimes makes him feel like his knee is going to give out on him, especially

when going up and down stairs, inclines, and ladders; that he has had injections in both his knee and back but that the pain keeps coming back; that he uses a cane to keep from falling sometimes; that he has had rotator cuff surgery that makes it hard for him to lift things above his head; that he has difficulty walking, standing for more ten minutes, and sitting for more than ten or fifteen minutes; and that he has difficulty remembering things, getting along with people, and staying on task. (Tr. 39-58). The medical records show that Plaintiff has sought treatment for shoulder, knee, and lower back impairments and has received physical therapy and injections. The record also contains opinion evidence regarding Plaintiff's physical impairments from two non-examining state agency consultants, opinion evidence regarding Plaintiff's mental impairments from two non-examining state agency consultants, and a report from a psychologist who performed a consultative examination. The Court will cite to specific portions of the record as needed to address the parties' arguments.

## II. Procedural Background

On August 21, 2020, Plaintiff applied for DIB, alleging disability beginning February 6, 2020. (Tr. 304-05). Plaintiff subsequently amended his application to be for a closed period from February 6, 2020, through January 11, 2022, the date he returned to work. (Tr. 353). His application was denied initially and on reconsideration. (Tr. 151-59). On March 17, 2021, Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ"). (Tr. 162-63). On October 7, 2021, the ALJ held a hearing at which Plaintiff and a vocational expert testified. (Tr. 31-66). On May 2, 2023, the ALJ held a second hearing at which only a vocational expert testified. (Tr. 67-78). On August 10, 2023, the ALJ issued an unfavorable decision. (Tr. 8-30). On September 25, 2023, Plaintiff filed a request that the Appeals Council review the ALJ's decision. (Tr. 293-95).

On July 1, 2025, the Appeals Council denied Plaintiff's request for review. (Tr. 1-5). The decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

### III. Standard for Determining Disability Under the Act

To be eligible for benefits under the Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if the claimant is, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509], or a combination of impairments that is severe and meets the duration requirement"; if the claimant

does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner finds the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 404.1545(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant is found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that,

given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1560(c)(2).

## IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff had not engaged in substantial gainful activity since February 6, 2020, the alleged onset date; that Plaintiff had the severe impairments of facet arthropathy/degenerative joint disease and spur complex of the lumbar spine, status post remote rotator cuff repair of the left shoulder, mild acromioclavicular joint osteoarthritis, patellofemoral syndrome of the right knee, obesity, post-traumatic stress disorder, anxiety, and depression; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 13-14). The ALJ found that Plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he cannot climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs. The claimant can perform no more than occasional balancing on narrow, slippery, or erratically moving surfaces and he can engage in occasional stooping, kneeling, crouching, and crawling. He can perform no overhead reaching, pushing, or pulling bilaterally and can engage in no more than frequent fine and gross manipulation. The claimant cannot work at unprotected heights or around moving mechanical parts or other such hazards. He cannot perform work involving vibration, such as would be required by the operation of heavy equipment drills, jackhammers, or other such devices. He can have no concentrated exposure to extreme cold. The claimant can maintain the concentration required to perform simple routine tasks, remember work procedures, and make simple work-related decisions. He cannot work at a fast pace such as an assembly line but can stay on task and meet reasonable production requirements in an environment that allows him to maintain a flexible and goal-oriented pace. He is further limited to work that requires only occasional changes in the work setting which are introduced gradually and he can have occasional interaction with co-workers, supervisors, and the public.

(Tr. 17). At Step Four, the ALJ found Plaintiff was unable to perform any past relevant work. (Tr. 23). At Step Five, relying on the testimony of a vocational expert, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including representative occupations such as electrical assembler, mail clerk, and merchandise marker. (Tr. 23-24).

## V. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also Estes v. Barnhart,* 275 F.3d 722, 724 (8th Cir. 2002); 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 587 U.S. at 103 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good

reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

The Court reviews de novo whether the Commissioner's determination was based on legal error. *Dewey v. Astrue*, 509 F.3d 447, 449 (8th Cir. 2007) (citing *Miles v. Barnhart*, 374 F.3d 694, 698 (8th Cir. 2004) & *Keller v. Shalala,* 26 F.3d 856, 858 (8th Cir. 1994)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Collins v. Astrue,* 648 F.3d 869, 871 (8th Cir. 2011) (internal citations omitted).

## VI. Discussion

Plaintiff challenges the ALJ's decision on two grounds: (A) that the ALJ failed to adequately evaluate the medical opinion evidence from the four state agency consultants; and (B) that the ALJ failed to properly evaluate Plaintiff's subjective complaints of pain.

### A. The ALJ's Evaluation of the Medical Opinion Evidence

Plaintiff's first argument is that the ALJ failed to properly consider the medical opinion evidence offered by the state agency consultants who evaluated Plaintiff's physical and mental abilities. Under the regulations applicable to Plaintiff's claim, the ALJ must evaluate the persuasiveness of medical opinions in light of the following factors: (1) supportability (the degree to which the medical source presents objective medical evidence and supporting explanations to support his or her opinions); (2) consistency (how consistent the opinion is with evidence from other medical and nonmedical sources); (3) relationship with the claimant (including the length, purpose, nature, and extent of the relationship, and the frequency of examinations); (4)

specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(a)-(c). The first two factors—supportability and consistency—"are the most important factors" to consider when determining the persuasiveness of a medical source's medical opinions, and the ALJ must "explain how [he or she] considered the supportability and consistency factors" in the decision. § 404.1520c(b)(2). The ALJ's reasoning with respect to these factors must be "clear enough to allow for appropriate judicial review." *Cropper v. Dudek*, 136 F.4th 809, 814 (8th Cir. 2025) (internal quotation marks omitted). An ALJ's failure to address either the "supportability" factor or the "consistency" factor with respect to a particular medical opinion is a legal error that may require remand. *See, e.g., Starman v. Kijakazi*, No. 2:20-CV-00035-SRC, 2021 WL 4459729, at *5 (E.D. Mo. Sept. 29, 2021) (citations omitted).

Plaintiff does not argue that any specific aspect of any of the opinions at issue should have been found more or less persuasive, nor does Plaintiff point to any specific evidence related to the persuasiveness of these opinions that the ALJ should have considered but did not. Instead, he argues only generally that the ALJ did not adequately articulate how she considered the supportability and consistency factors.

*1. Opinions Regarding Physical Impairments*

Non-examining state agency medical consultants Colleen Ryan, M.D., and Frank Mikell, M.D., each reviewed Plaintiff's medical records and opined that Plaintiff could perform the requirements of light work with some additional limitations, including limitations to only occasionally climbing ladders, ropes, or scaffolds; frequently climbing ramps and stairs; frequently balancing, stooping, kneeling, and crouching; occasionally reaching overhead on the left; frequently reaching overhead on the right; and avoiding concentrated exposure to extreme cold,

vibration, and hazards. (Tr. 89-92, 107-11). The ALJ found these opinions "partially persuasive" and made an RFC assessment that was more restrictive than either consultant's opinion. (Tr. 21).

After review of the ALJ's decision, the Court finds that the ALJ adequately articulated her consideration of the supportability and consistency factors. The ALJ adequately addressed supportability by finding the opinions were "supported by the evidence upon which Dr. Ryan and Dr. Mikell relied" and citing the consultants' descriptions of the medical evidence from Plaintiff's medical records—medical evidence the ALJ also discussed in detail elsewhere in her opinion. (Tr. 21, 84-85, 92, 102-03, 111). The ALJ also adequately addressed consistency, finding that "given inconsistencies with evidence developed at the hearing level, including the claimant's testimony, I have further limited the claimant as detailed above" and adding to the physical RFC additional limitations not found in the consultants' opinions, including limitations to no overhead reaching, pushing, or pulling bilaterally and to no more than occasional stooping, kneeling, crouching, crawling, or climbing of ramps and stairs. (Tr. 17, 21). Although the ALJ could have been more detailed in her discussion of supportability and consistency, the ALJ's analysis was sufficient for the Court to follow the ALJ's reasoning and to permit the Court to review Plaintiff's challenge to the ALJ's evaluation. The Court finds no error.

*2. Opinions Regarding Mental Impairments*

Initially, non-examining state agency psychological consultant Alvin Smith, Ph.D., found Plaintiff's mental impairments were non-severe. (Tr. 87). At the reconsideration stage, however, non-examining state agency psychological consultant M.W. DiFonso, Psy.D., found Plaintiff was moderately limited in the ability to understand, remember, and carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to interact appropriately with the general public; and the ability to accept instructions and respond

appropriately to criticism from supervisors (Tr. 112-15). Dr. DiFonso also found that Plaintiff was "capable of multi-step productive activity [with] modified social demand." (Tr. 115). After summarizing these findings, the ALJ found Dr. Smith's opinion "not persuasive" and found Dr. DiFonso's opinion "persuasive."

The Court finds that the ALJ adequately articulated her consideration of the supportability and consistency factors for each of these opinions. As to Dr. DiFonso's opinion, the ALJ adequately addressed supportability by noting that Dr. DiFonso's findings were "supported by the evidence upon which [Dr. DiFonso] relied" and citing Dr. DiFonso's summary of the medical evidence, which included a discussion of mental status examinations and provider observations that showed some abnormalities associated with depression and anxiety but which also showed Plaintiff performing reasonably well on cognitive asks, carrying out a fair set of activities of daily living, and showing appropriate interpersonal skills in a clinical interview. (Tr. 22, 115). The ALJ also properly addressed the consistency of Dr. DiFonso's opinion with the rest of the record, noting that Dr. DiFonso's findings were "consistent with [an examining psychologist's] conclusions balanced against the claimant's consistently unremarkable subjective and objective psychiatric presentation" and citing the examining psychologist's findings and other records showing largely unremarkable findings. (Tr. 22, 654, 673-74, 846).

As to Dr. Smith's opinion, the ALJ did not explicitly conduct a separate supportability or consistency analysis, instead indicating that based on her assessment of Dr. DiFonso's opinion, she "necessarily" found Dr. Smith's conclusion that Plaintiff's mental impairments were not severe was "not persuasive." (Tr. 22). The Court finds no reversible error. Based on the ALJ's analysis of Dr. DiFonso's opinion, the reasons why the ALJ found Dr. Smith's opinions unsupported and inconsistent with the record are readily apparent to the Court. Moreover, to the extent that the ALJ

did err in not further articulating her assessment of the supportability and/or consistency of Dr. Smith's opinion, that error was harmless. Dr. Smith's opinion was unfavorable to Plaintiff, and the ALJ found it "unpersuasive." Any error in not further explaining why that opinion was unpersuasive was harmless and does not require reversal. *See Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (finding any legal error in the ALJ's analysis of a medical opinion was harmless where it would not have affected the ALJ's decision).

In sum, although the ALJ could have been more detailed in her discussion of these opinions, the Court finds no error that requires remand.

**B. The ALJ's Analysis of Plaintiff's Pain**

Plaintiff's second argument is that the ALJ failed to properly evaluate Plaintiff's subjective complaints of pain. "When evaluating the claimant's subjective complaints, the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the *Polaski* factors: (i) the claimant's daily activities; (ii) the duration, frequency, and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) the dosage, effectiveness, and side effects of medication; and (v) the claimant's functional restrictions." *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)). *See also* 20 C.F.R. § 404.1529(c) ("Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20

minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."). "The ALJ is not required to discuss each *Polaski* factor as long as 'he [or she] acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)). "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). The Court will defer to the ALJ's assessment of a claimant's subjective complaints where the assessment is "supported by good reasons and substantial evidence." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019).

After reviewing the record, the Court finds that the ALJ conducted an adequate assessment of Plaintiff's complaints of pain symptoms, consistent with SSR 16-3p and the relevant regulations, and that the assessment is supported by substantial evidence. At the outset, the Court notes that the ALJ did give significant weight to Plaintiff's subjective complaints of pain, limiting Plaintiff to less than a full range of light work with several postural and environmental limitations, including limitations that were more restrictive than those imposed by any medical source. To the extent that the ALJ did discount Plaintiff's subjective complaints, that decision was supported by good reasons and substantial evidence. The ALJ expressly cited 20 C.F.R. § 404.1529 and SSR 16-3p, discussed the allegations related to pain in Plaintiff's function report and hearing testimony; and specifically made a finding that "the claimant's statements concerning the intensity,

persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 17-19).

In making this finding, the ALJ considered several of the relevant factors. The ALJ properly considered Plaintiff's reports to his providers regarding the frequency, intensity, and location of his pain and the effects of treatment on his pain. The ALJ provided a detailed discussion of Plaintiff's reports of pain to his providers during the relevant period, and she reasonably considered that Plaintiff reported significant improvement in his spinal impairments from injections and physical therapy and improvements in his shoulder impairments from physical therapy. (Tr. 19-20, 524-25, 538-39, 584, 593, 646-47, 687-788, 1038, 1064). She also considered factors that aggravated Plaintiff's pain, noting that Plaintiff had testified that bending, stooping, squatting, and climbing stairs aggravated his pain and including in the RFC significant limitations on each of those activities. (Tr. 17-18). The ALJ also properly considered that the record reflects a conservative approach to treatment for all of Plaintiff's pain-related impairments, with his providers prescribing only physical therapy and/or injections. (Tr. 19-20). *See Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (noting that a conservative course of treatment supported the ALJ's discounting of plaintiff's complaints of pain). The ALJ further reasonably found the objective medical evidence did not fully support Plaintiff's complaints, noting that "while the claimant endorsed moderate to severe problems, his objective presentation remained mild to moderate" and discussing numerous mild to moderate objective findings in the record, including findings of mild tenderness to palpation in the cervical and lumbar paraspinal muscles, imaging showing facet arthropathy at L5-S1 but no acute lumbar or cervical findings, mild findings on imaging of the shoulder (Tr. 880), full range of motion in the left shoulder by May 2021, no point tenderness or shoulder impingement in the right shoulder, and only mild degeneration on imaging of the right

knee. (Tr. 18-20, 493, 494-95, 846, 880, 895, 1006). Although the ALJ may not rely solely on objective medical evidence to discount subjective complaints of pain, it was reasonable for the ALJ to consider these findings in conjunction with the rest of the record and the other relevant factors. *See Goff v. Barnhar*t, 421 F.3d 785, 792 (8th Cir. 2005) (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing a claimant's allegations of disabling pain). Finally, the ALJ reasonably considered the medical opinions in the record, which did not indicate that Plaintiff had any functional limitations more significant than those reflected in the RFC.

Plaintiff argues that the ALJ failed to discuss Plaintiff's work history and daily activities. Although it would have been preferable for the ALJ to have discussed those factors, it is well-established that the ALJ need not "need not explicitly discuss each *Polaski* factor." *Goff*, 421 F.3d at 791 (quotation marks omitted). "It is sufficient if he [or she] acknowledges and considers those factors before discounting a claimant's subjective complaints." *Id.* at 791-92. Here, a review of the decision as a whole indicates that the ALJ adequately acknowledged and considered all of the *Polaski* factors, even if she did not explicitly discuss the evidence related to some of the factors as part of her discussion of Plaintiff's pain.

The Court acknowledges that the record contains conflicting evidence and that the ALJ could have reached a different conclusion with respect to Plaintiff's pain and the limiting effects of that pain on his RFC. However, the evaluation of a claimant's subjective symptoms is "primarily for the ALJ to decide, not the courts." *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016) (quotation marks omitted). It is not this Court's task to reweigh the evidence presented to the ALJ. The ALJ conducted an adequate evaluation of Plaintiff's claimed symptoms, considered relevant factors, and gave good reasons, supported by substantial evidence, for partially discounting those

symptoms. The ALJ's decision lies within the available "zone of choice," and the Court may not disturb it merely because it might have reached a different conclusion. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) ("We will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because we might have reached a different conclusion had we been the initial finder of fact."). *See also Partee*, 638 F.3d at 863 ("If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.") (quotation marks omitted).

## VII. CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 17th day of September, 2026.